## McCoy, Appellant. *v.* McCoy.

*Partnership—Conveyance of real estate—Evidence.*

Where a father and two sons execute partnership articles but it appears that the father contributes all the capital, and that it was not the intention of the parties to become partners, and the father assumes supreme control over all the alleged partnership assets, a conveyance by the father to one of the sons of certain real estate for which he has paid by a check on the account of the alleged partnership, will be sustained after the death of the father in favor of the grantee.

Argued Feb. 3, 1902. Appeal, No. 268, Jan. T., 1901, by plaintiff, from decree of C. P. Montgomery Co., March T., 1900, No. 1, on bill in equity in case of Alexander McCoy v. Robert McCoy. Before McCollum, C. J., Dean, Fell, Brown and Mestrezat, JJ. Affirmed.

Bill in equity for an account.

Weand, J., filed the following opinion:

The bill is for a partnership account and alleges, 1. That the father of plaintiff and defendant, being the owner of a lime manufacturing plant in Montgomery county, organized a copartnership for the purpose of carrying on said business under the firm name of Robert McCoy & Company. 2. That the members of said copartnership were plaintiff, defendant, and one Francis. The interest of plaintiff, then a minor, was taken by his father, as trustee for him. 3. That the interests of the partners were equal, and 4. That the capital, $11,001, was to be and was furnished by said Robert McCoy, Sr., he giving his sons their interest therein, and taking the obligation of said Francis for his interest. The articles of copartnership were in writing, dated October 1, 1890. On March 12, 1891, Jacob S. Francis assigned his interest in the firm to Robert McCoy, Sr. During the existence of this partnership from its inception to its end, Robert McCoy, Sr., controlled and managed the entire business and was its sole financial agent, his two sons being employed about the business, each receiving $50.00 per month.

Robert McCoy, Sr., died April 8, 1897, and all his books and

papers, as well as the books and papers relating to said copartnership, came into the hands of the defendant, as one of his executors, including all copies of said articles of copartnership which had remained in the possession of the father. It is claimed by the plaintiff that no settlement of said partnership has been made and that defendant refuses to hand to him his copy of said articles of copartnership, or to suffer him to have access to the books, account or papers of said partnership.

Plaintiff alleges that there are assets of the said partnership still outstanding as well as others, which have come into the hands of the defendant and are still unaccounted for, as well as large sums due from said defendant to plaintiff by reason of payments to him out of the profits of said partnership in excess of his due proportion thereof.

The prayer was that defendant be ordered to deliver to plaintiff his copy of the articles of copartnership; that a receiver be appointed to take possession of the books and papers of said copartnership and the assets and property thereof; that an account be stated of the business of said copartnership business and an equitable distribution be made of the assets thereof; and that defendant be decreed to pay over to plaintiff such sum or sums as upon said accounting may be found due him to plaintiff.

Defendant filed an answer to the bill admitting the articles of copartnership, but alleging that each son was by said articles required to and did execute and deliver to Robert McCoy, Sr., a judgment note for $3,667, payable in three equal annual instalments, with interest, payable annually; that neither of these obligations was ever paid in whole or in part, or any interest thereon; denying that either son ever received any firm profits or were ever recognized as partners; that said partnership, if it ever existed, had expired by limitation September 20, 1895, as provided by the articles of copartnership. It is further denied that said partnership ever existed in good faith, or if it did it was settled up, by all parties in interest acquiescing, in the senior, Robert McCoy's absorption of everything connected therewith, also denying that any assets have come to defendant's hands unaccounted for; that any sum is due from defendant to plaintiff, and averring that there are no assets of said

copartnership outstanding; other matters in denial of the averments of the bill and explanation of how the partnership existed and was determined and the position assumed by the father in the business, acquiesced in by the sons, and a distribution amicably by his estate after his death; after the filing of the answer the following agreement was entered into by the parties:

July 27, 1900. It is agreed by plaintiff and defendant that all differences between them arising out of the transactions complained of in the within bill in equity have been adjusted, except an item of $752.38, which is to be determined in McCoy v. McCoy, No. 48, June term, 1900, common pleas of Montgomery county, Pennsylvania, and also, except the liability of defendant to account to plaintiff for the item known as the Lees house, which was bought April 15, 1895, for $5,750. Accountability for this item is the sole question remaining in this proceeding. Subsequent to the formation of the alleged partnership Robert McCoy, Sr., purchased a property known as the Lees house, and which he conveyed to the defendant, the consideration in deed being $10,000. It is claimed by plaintiff that this property was paid for by Robert McCoy, Sr., out of partnership funds, and that defendant is therefore liable to account for plaintiff's interest in the amount. The testimony taken sufficiently explains the whole partnership transaction and the necessity for a settlement of partnership accounts, even if plaintiff's allegations are true that Robert McCoy, Sr., was liable to account for the money so used.

### FINDINGS OF FACT.

1. Prior to October 1, 1890, Robert McCoy, Sr., was the owner of a lime manufacturing plant in Montgomery county, Pennsylvania, and on that date a copartnership, at least on paper, was formed by articles of agreement in which the partners were stated to be Robert McCoy, Jr., Jacob Francis and Alexander McCoy, by his guardian, Robert McCoy, Sr., the title of the firm to be " Robert McCoy & Company."

2. Said Robert McCoy, Sr., was to and did on the same day execute a lease to said " Robert McCoy & Company " of his lime works, the term to be ended and determined on September 20, unless sooner terminated under any of the provisions of said agreement.

3. The "Robert McCoy & Company" was to pay as rental for said premises the sum of $5,000 per annum, in quarterly payments, etc.

6. The lease was to be determined and ended at any time when the partnership should be ended under the provisions of the agreement.

7. The capital of said business consisted of $11,001, to be covered by said Robert McCoy in stock of manufactured lime or lime in process of manufacture, coal, iron, horses, carts, etc., —$6,000, and cash $5,001.

8. Each party was to execute and deliver to said Robert McCoy, Sr., a bill single for $3,667, payable in equal instalments, in one, two and three years with interest payable annually; none of this was ever paid.

9. Robert McCoy, Sr., only was to sign and indorse all checks, notes or obligations in the firm name, except checks indorsed for deposit to the credit of the firm, which last mentioned might be made by any of the said parties.

10. Robert McCoy, Jr., Alexander McCoy and Jacob Francis were each to draw monthly for their own use, $50.00.

11. Robert McCoy, Sr., succeeded to the rights of Jacob Francis.

12. All profits and losses were to be equally shared by said three parties. Settlement was to be made yearly on September 30; neither of said three parties were entitled to draw any part of the profits, except the said sum of $50.00 per month, until all claims due said Robert McCoy, Sr., were fully paid and discharged.

13. The claims of said Robert McCoy, Sr., were never paid or discharged by said parties personally.

14. Robert McCoy, Sr., started in life without means or education, but by his frugal habits, business capacity and diligent attention to business succeeded in acquiring a valuable plant. With the intention of inducing his sons to follow his example, he conceived the idea of the copartnership, but by its terms he reserved the right to manage its business and secure himself in various ways.

15. Neither plaintiff nor defendant ever regarded themselves as actual partners in the business.

16. Robert McCoy, Sr., opened a bank account in the name

of Robert McCoy & Company, in which he deposited moneys whether his own, or the firm's, and used the funds so deposited for the firm or himself as required.

17. When he bought the Lees house he drew checks in payment on the firm account, but at the time, and before and since, the firm was indebted to him in a sum in excess of what he drew for the purpose.

18. The house was not purchased as firm property, or used as such, nor ever recognized as such during his lifetime by either of said parties.

20. After the time for the termination of said partnership, to wit: April 15, 1896, there was incorporated " The McCoy Lime Company " with a capital of $100,000, divided into 1,000 shares of the par value of $100 each. The names of the subscribers and shareholders were: Robert McCoy, Sr., 990 shares; Robert McCoy, Jr., three shares; Alexander McCoy, three shares; Sarah McCoy, two shares; Edward F. Kane, two shares.

21. The stock subscribed for in the name of Robert McCoy, Sr., was issued to him as full paid stock in consideration and full payment for the tract of land in which the Robert McCoy Company had carried on operations and all the buildings, etc., connected therewith.

22. By a bill of sale dated June 1, 1896, the said Robert McCoy, Sr., with consent of his sons, transferred to said new corporation the personal property, or what remained or its equivalent, which had been by him put into the firm at a valuation of $6,000.

23. The conveyance from father to son of the Lees house was without any knowledge of the latter as to whose money was used in the purchase.

24. The father died possessed of a large estate.

25. The books of Robert McCoy, Sr., are available to plaintiff at proper times and for proper purposes.

26. As I find that there was no partnership in which plaintiff had an interest, a receiver is not necessary and as the only matter in dispute, if there was a partnership, is the question of the purchase of the Lees house with firm assets, plaintiff as a surviving partner can state an account as a basis for recovery.

27. As the evidence shows that Robert McCoy, Sr., was to advance $5,000 in cash to the firm and the sons were to pay him $7,334—$12,334—his withdrawing the amount claimed, $5,410, was not in excess of what the firm owed him and there is no proof that it was not his own money.

28. The fact that no interest in the firm was ever claimed by the sons during their father's lifetime—no payment for the stock obtained from or for the money advanced his control of the business of the firm—his sale of the personalty to the new corporation, with consent of the sons, and no payment of principal or interest of the amount each son was to pay the father, the retention of the father of all copies of the agreement, leads to the conclusion that this alleged partnership never in fact existed, or if it ever did that all parties recognized the ownership of the father in the whole.

29. The books of Robert McCoy, or of the Robert McCoy Company, were produced at the hearing, but no evidence was extracted from them to show an indebtedness from Robert McCoy, Sr., to the alleged firm.

30. There was no evidence that any rental had been paid them, or that either son had ever drawn anything as profits.

31. Both sons have accepted the provisions of their father's will.

### CONCLUSIONS OF LAW.

1. That Robert McCoy was not debtor to the alleged firm.

2. That no such firm in reality existed, or if it ever did Robert McCoy succeeded to all its rights.

3. That as the claim is made to compel payment by the defendant, it cannot be sustained because the property was not bought for or used as partnership property, and defendant had no knowledge of the fact that it was bought with firm assets, if so bought.

4. That plaintiff's bill be dismissed with costs.

Before plaintiff can ask for a receiver or demand an account, he must at least show a prima facie case entitling him thereto. From the evidence presented on the hearing we feel convinced that whatever the original intention of the partnership agreement was, it was never carried into effect in any respect. McCoy, the elder, admittedly assumed entire ownership which

during his lifetime was never disputed by his sons, and after his death, when by his will he has disposed of his estate to the satisfaction of his heirs, it would be inequitable to hold that during his lifetime he had wronged his children. His business methods were not such as an ordinary business man with business education would adopt, but this was known to his sons. It is impossible to say that the money he paid for the real estate in question, even assuming that there existed a partnership, was partnership funds, for he was a man of large means, having investments to a considerable amount in real estate and personalty and mingled all moneys latterly in one account.

It is incredible that his sons should have allowed him to treat this business as he did, if they thought themselves partners, and the fact that he never allowed them a share of the profits, or gave them copies of the agreements refutes plaintiff's claim. Enough has been divulged to show that even if an account should be stated, each would be indebted to their father, and he would be a creditor of the firm. No claim is made or can be that the property was bought for partnership purposes or ever treated as such.

By the terms of the agreement the partnership was to expire September 30, 1895, but no settlement was made and the business was continued as before until a corporation was formed, then the father turned in as part of his payment for stock the very property which it is alleged he sold to the firm. They never paid him a cent interest, cost of personal property, money advanced, or their notes for their shares,— a strange combination of circumstances if plaintiff's contention is correct.

The object of the bill as limited by the agreement of July 27, 1900, is either to establish a claim against the estate of Robert McCoy, Sr., of which estate plaintiff and defendant were executors, and which estate has been distributed by them amicably, or else to fasten a trust upon the Lees house by making it an asset of the firm and thus deprive defendant of its ownership. As the house was not bought for partnership purposes, and as Robert McCoy, Sr., only used money to which he was entitled and defendant took title without knowledge of how the property had been acquired, we think plaintiff has no just cause for a receiver or an account from defendant.

A receiver would be entirely useless as the case stands, and we are unwilling to cast a blemish upon the character of old Robert McCoy by holding that he acted in this matter in bad faith to his children, for whom he showed love and affection, as is evidenced by his actions during life and by the disposition of his estate.

And now, January 21, 1901, it is ordered that the prothonotary enter a decree nisi dismissing the bill at the cost of the plaintiff; and unless exceptions are filed as provided by the equity rules he will enter a final decree as of course.

*Error assigned* was decree dismissing bill.

*Henry Freedley* and *H. M. Brownback*, for appellant.

*Wanger & Knipe* and *N. H. Larzelere*, for appellee, were not heard.

PER CURIAM, May 19, 1902 :

The decree in this case is affirmed on Judge WEAND'S opinion.

---

Knox, Appellant, *v.* Philadelphia & Reading Railway Company.

*Negligence—Railroads—Speed—Signals—Evidence—"Stop, look and listen."*

The testimony of one witness, who had no qualification to judge of speed, that a train was running at the rate of sixty miles an hour on a rainy day across a country crossing is insufficient to carry a case to the jury, and this especially so where such witness is contradicted by the schedule of the train and the direct testimony of the engineer.

The testimony of one witness, a passenger, that a train approached a crossing without ringing a bell or sounding a whistle, contradicted by the engineer, fireman, conductor and brakeman, is insufficient to carry a case to the jury on the question of the railroad company's negligence.

Where a person stops at a point 125 feet from a grade crossing, and then proceeds without stopping again, in a heavy rain, with his wagon curtains down, and with the view obstructed, until the tracks are reached, he is guilty of contributory negligence, and if he is killed by a passing train no recovery can be had for his death.